UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:19-cr-150-JMS-MJD |
| | ) | |
| JOSEPH PIERSON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Joseph Pierson was indicted on two counts of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). [Filing No. 5.] He filed a Motion to Suppress evidence that was discovered during what he argues was an unlawful traffic stop and a statement that he asserts was the result of an unlawful interrogation. [Filing No. 26; Filing No. 27.] The Motion is now ripe for the Court's decision.

## I.
### BACKGROUND

On December 19, 2019, the Court held an evidentiary hearing on Mr. Pierson's Motion to Suppress. [*See* Filing No. 32.] The following are the Court's factual findings based on the evidence presented at that hearing and submitted with the parties' briefs. In making the findings that follow, the Court has considered the testimony and demeanor of the witnesses who testified at the hearing: Lieutenant Jason Lee of the Marion County Sheriff's Office and Amanda Pierson, Mr. Pierson's wife. Where Lt. Lee's testimony and Mrs. Pierson's testimony conflict, the Court concludes that Mrs. Pierson is highly motivated to testify in her husband's favor, and therefore credits the testimony of Lt. Lee, which the Court finds credible.

On April 13, 2019, Mr. Pierson was a passenger in a vehicle belonging to and driven by his wife. The vehicle was travelling south down North Mickley Avenue in Indianapolis, Indiana as the couple was headed from Mrs. Pierson's residence to a gas station on that street. Lt. Lee was conducting proactive traffic enforcement in the area, which he characterized as a "high crime" area in which there had been a recent murder and regular incidents of gunfire. Lt. Lee observed Mrs. Pierson's vehicle drive past where he was parked and heard what he believed was excessive noise resulting from a defective muffler. As he followed the car, Lt. Lee observed Mr. Pierson in the passenger's seat leaning forward and moving his arms in a manner that was consistent with placing something underneath the seat.[1] Lt. Lee followed Mrs. Pierson's vehicle for a short distance before observing her fail to signal a right turn into a gas station parking lot, at which point he activated his lights and conducted a traffic stop of the vehicle.

After Mrs. Pierson's vehicle came to a stop, but before Lt. Lee approached the vehicle, Lt. Lee ran the license plate and discovered that Mrs. Pierson was the owner of the car and her driver's license was suspended. Lt. Lee approached the passenger's side of the vehicle because of the movements he had seen and observed that Mr. Pierson's hands were visibly shaking, and he appeared to be nervous. Lt. Lee instructed Mr. Pierson to exit the vehicle and place his hands on the roof. Mr. Pierson complied, and when he raised his hands to place them on top of the car, his shirt was lifted, revealing a handgun in his waistband. At that time, Lt. Lee shoved Mr. Pierson against the car and called for backup, and Mr. Pierson identified himself and disclosed that there was a warrant out for his arrest. Once backup arrived, Lt. Lee placed Mr. Pierson in

---

[1] Mrs. Pierson testified that nothing happened in the car after she saw Lt. Lee pull out behind her. She also testified that she and her husband were "reconciling" at the time, in response to questioning about whether he lived with her. The Court inferred from the answer that Mr. Pierson was not living with her. She also testified that the car was hers, and she did not know that the guns were in the car. The Court finds it difficult to reconcile this testimony.

handcuffs and another officer ran his name through the system to confirm that he did indeed have an active arrest warrant.

Lt. Lee did not read Mr. Pierson his *Miranda*[2] warnings at any time during the stop, but Lt. Lee acknowledged that Mr. Pierson was not free to leave. Because Mrs. Pierson's driver's license was suspended, she was not permitted to drive the vehicle after the stop, so it was towed from the scene. Other officers conducted an inventory search of the vehicle and a second firearm was located underneath the front passenger's seat. When that gun was found, Mr. Pierson was standing next to Lt. Lee near the front of the patrol car, and Mr. Pierson, unprompted, stated that the second gun was not stolen, and he had received it from his uncle.

## II.
### DISCUSSION

### A. The Initial Traffic Stop

Mr. Pierson argues that the traffic stop was not supported by probable cause because Mrs. Pierson did not commit a traffic violation before her car was pulled over. [Filing No. 27 at 2-3.] The government responds that the vehicle's exhaust was defective, and Mrs. Pierson failed to signal a turn, either of which was sufficient to provide probable cause to stop the vehicle. [Filing No. 30 at 4-5.]

A passenger has standing to challenge the constitutionality of a stop because he is seized during a stop just as the driver is seized. *Brendlin v. California*, 551 U.S. 249, 256-59 (2007). Upon such challenge, "[t]he prosecution bears the burden of proving by a preponderance of the evidence that a warrantless stop is supported by probable cause." *United States v. Garcia-Garcia*, 633 F.3d 608, 612 (7th Cir. 2011) (citations omitted). "When a police officer reasonably believes that a driver has committed even a minor traffic offense, probable cause supports the

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

stop." *Id.* (citations omitted). The probable cause inquiry is objective and involves two separate questions: first, the Court must determine what facts were known to the officer when he stopped the vehicle, and second, the Court must decide whether a reasonable officer could conclude that those facts amount to a violation of the law. *Id.* at 612-13.

Here, the Court credits Lt. Lee's testimony that he believed Mrs. Pierson's car had an excessively loud exhaust, indicative of a defective muffler. Indiana law requires that a vehicle be equipped with a muffler or other device that is in good working order and reduces excessive noise. Ind. Code. § 9-19-8-3 ("A motor vehicle must be equipped with a muffler or other noise dissipative device that meets the following conditions: (1) Is in good working order. (2) Is in constant operation to prevent excessive noise."). Accordingly, based on Lt. Lee's observation that the vehicle's exhaust was loud and likely defective, a reasonable officer could have concluded that Mrs. Pierson was violating Indiana law, and the stop was supported by probable cause. *See Garcia-Garcia*, 633 F.3d at 612-13.

## B. The Pat-Down Search

Mr. Pierson argues that, regardless of the legality of the initial traffic stop, the pat-down search of his person was unlawful because his general nervousness was insufficient to justify the search. [Filing No. 27 at 3-4.] The Government responds that Mr. Pierson's furtive movements indicating that he may have been hiding something under the seat justified the pat-down search. [Filing No. 30 at 5.]

"[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Maryland v. Wilson*, 519 U.S. 408, 415 (1997). The officer may perform a pat-down search of the driver and passengers "upon reasonable suspicion that they may be armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 332 (2009) (quoting *Knowles*

*v. Iowa*, 525 U.S. 113, 117-118 (1998)).  In determining whether an officer has reasonable suspicion that a suspect might be armed and dangerous, the Court must consider the totality of the circumstances known to the officer, including the officer's experience, the behavior and characteristics of the suspect, and the time and location of the stop.  *United States v. Tinnie*, 629 F.3d 749, 751-52 (7th Cir. 2011) (concluding that the totality of circumstances justified a pat-down search, including that the stop was late at night in a high-crime neighborhood and that the defendant "acted suspiciously by moving around nervously as the officers approached the car").  The Seventh Circuit has recognized that when a suspect's "movements, including bending forward at the waist and reaching toward the passenger and rear seats, reasonably suggest[] that he could be reaching for or concealing a weapon," a pat-down search is justified.  *United States v. Vaccaro*, 915 F.3d 431, 436 (7th Cir. 2019).

Here, it is clear that Lt. Lee had the authority to order Mr. Pierson to exit the vehicle.  *See Wilson*, 519 U.S. at 415.  Furthermore, the Court credits Lt. Lee's testimony that he observed Mr. Pierson moving in a way that suggested he could be hiding something underneath the seat and that he appeared to be nervous when Lt. Lee made contact with him.  These observations, in combination with the fact that the area in which the stop occurred was known to be a high crime area, gave rise to a reasonable suspicion that Mr. Pierson could be armed.  *See Vaccaro*, 915 F.3d at 436; *Tinnie*, 629 F.3d at 752.  Accordingly, the pat-down search was lawful, and the firearm discovered in Mr. Pierson's waistband need not be suppressed.

### C.  The Second Firearm

Although not specifically challenged by Mr. Pierson apart from his objection to the legality of the initial traffic stop, in the interest of completeness, the Court addresses the admissibility of the second firearm.  The Government contends that the firearm under the

passenger's seat would have inevitably been discovered during an inventory search of the vehicle before it was towed. [Filing No. 30 at 6.]

There is no dispute that, if the initial stop was lawful, once Mr. Pierson was arrested and it was determined that Mrs. Pierson did not possess a valid driver's license, the vehicle needed to be impounded and towed away according to police procedure. Thus, the inventory search of the vehicle pursuant to it being impounded was lawful, and the second firearm is admissible. *See United States v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010) (citing *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976)) ("Inventory searches constitute a well-recognized exception to the warrant requirement and are reasonable under the Fourth Amendment.").

### D. The Unwarned Statement

Mr. Pierson asserts that his statement that the firearm found inside the vehicle was not stolen and he had received it from his uncle should be excluded because he was not given *Miranda* warnings before the statement was made. [Filing No. 27 at 4.] The Government does not specifically address this issue in its response. [*See* Filing No. 30.]

To implicate *Miranda*, the defendant must be (1) in custody and (2) subject to interrogation. *E.g., United States v. Patterson*, 826 F.3d 450, 454 (7th Cir. 2016). "A person is in custody for *Miranda* purposes if there was a formal arrest or a restraint on his or her freedom of movement of the degree associated with a formal arrest." *Id.* (internal quotations and citations omitted). The test for determining whether an interaction constitutes an interrogation is "whether a reasonable objective observer would have believed that the law enforcement officer's statements to the defendant were reasonably likely to elicit an incriminating response." *United States v. Swanson*, 635 F.3d 995, 1002 (7th Cir. 2011) (internal quotations and citations omitted).

"Voluntary incriminating statements are not subject to *Miranda* warnings and are admissible as evidence." *Id.* (citations omitted).

Here, the Court concludes that, because Mr. Pierson had been handcuffed and was not free to leave the scene, he was in custody for *Miranda* purposes when the statement was made. *See Patterson*, 826 F.3d at 454. However, Lt. Lee testified that Mr. Pierson made the statement spontaneously, not in response to questioning, and the Court credits that testimony. Mr. Pierson did not present any evidence to the contrary, and merely argued that he did not recall making the statement. [*See* Filing No. 27 at 2; Filing No. 27-2 at 2.] Accordingly, the Court finds that Mr. Pierson was not being interrogated, *Miranda* is not implicated, and his voluntary statement is admissible. *See Patterson*, 826 F.3d at 454; *Swanson*, 635 F.3d at 1002.

### III.
#### CONCLUSION

For the foregoing reasons, Mr. Pierson's Motion to Suppress, [26], is **DENIED**.


Date: 12/20/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana


**Distribution via ECF only to all counsel of record**